**SWIGART LAW GROUP, APC**
Joshua B. Swigart (SBN 225557)
2221 Camino Del Rio S., Suite 308
San Diego, CA 92108
P: (866) 219-3343
F: (866) 219-8344
*Josh@SwigartLawGroup.com*

**SHAY LEGAL, APC**
Daniel G. Shay (SBN 250548)
Harrison J. Lynch (SBN 355139)
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429
*Dan@ShayLegal.com*
*Harrison@ShayLegal.com*

*Attorneys for Plaintiff*
*and the putative class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HALEY GORDON, individually and for all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STYL RESIDENTIAL CA, INC.,<br><br>Defendant. | Case No:<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT**<br><br>1. Unlawful Retention of Residential Security Deposits, Cal. Civ. Code § 1950.5<br>2. Unlawful Liquidated Damages, Cal. Civ. Code § 1671<br>3. Unfair and Deceptive Business Practices, Cal. Bus. & Prof. Code § 17200 et seq.<br>4. Rosenthal Fair Debt Collection Practices Act, Cal. Civ Code § 1788 et seq.<br>5. Statutory Larceny, Cal. Pen. Code §§ 484 & 496<br>6. Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 & 1964(c)<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## INTRODUCTION

Plaintiff Haley Gordon ("Plaintiff") brings this class action on behalf of Plaintiff and the two (2) Classes defined below against defendant STYL Residential CA, Inc. ("Defendant") for violating numerous landlord tenant laws and consumer protection laws. Plaintiff makes these allegations based on personal knowledge and investigation conducted by Plaintiff's attorneys.

## JURISDICTION AND VENUE

1. The Court has federal question jurisdiction under 28 U.S.C. § 1331, because Plaintiff's RICO claims arise out of violation of federal law 18 U.S.C. § 1961.

2. This Court has supplemental jurisdiction for Plaintiff's state law claims under 28 U.S.C. § 1367(a).

3. Alternatively, this Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

4. This is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and in which the proposed classes consist of more than one hundred (100) members. The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

5. Plaintiff is, and at all relevant times was, a citizen of the State of California.

6. Defendant is a corporation with its principal place of business in Illinois. Defendant is a citizen of Illinois within the meaning of 28 U.S.C. § 1332(c)(1).

7. Minimal diversity exists under 28 U.S.C. § 1332(d)(2) because at least one member of the proposed class is a citizen of California and Defendant is a citizen of Illinois.

8. None of the exceptions to jurisdiction under 28 U.S.C. § 1332(d)(3) or (4) apply because Defendant's principal place of business, direction, control, and coordination of corporate activities occur in Illinois, and the alleged misconduct is not uniquely local in nature.

9. Defendant's high-level corporate decisions, policies, and practices giving rise to the claims alleged herein were formulated, directed, and controlled from Illinois.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conducts substantial business within this District.

## PARTIES

### A. Plaintiff

11. Plaintiff is an individual over the age of eighteen years, and at all times relevant herein was and is, a resident of the County of Plumas in the State of California.

12. Plaintiff was a tenant at Defendant's apartment complex in Oakland, California, commonly referred to as Domain Oakland ("Domain").

13. Plaintiff was a resident of California at the time her causes of action accrued. The acts and omissions that caused all injuries complained of herein occurred within California.

### B. Defendant

14. Defendant is a multifamily property management company that operates many apartment communities throughout California. Defendant is headquartered in Chicago, Illinois. According to Defendant's website, Defendant operates at least six (6) apartment communities across the state of California.[1]

15. Defendant was Plaintiff's and Class Members' landlord at all times relevant.

16. Defendant has a centralized security deposit administration, rent and fee policy for all the California properties under its portfolio. It develops, promulgates, and administers security deposit and fee policies uniformly across its California properties.

## GENERAL FACTS

17. Plaintiff brings this class action because of Defendant's policies,

[1] *See* Defendant's website (https://www.stylresidential.com/properties/) (last accessed April 24, 2026)

practices, and procedures of (1) making unlawful deductions from residential security deposits and (2) charging unlawful late fees that amount to penalties.

18. In California, a tenant's security deposit may only be used by a landlord for certain tenant obligations. A landlord is required to provide an itemized statement, which details each legally permissible charge, along with any return of a security deposit, within twenty-one (21) days of the date the unit is returned to the landlord.

19. When the deductions exceed one hundred and twenty-five dollars ($125), the landlord is required to provide supporting documentation, such as receipts from the service provider and pictures, along with the itemized statement. A landlord is only allowed to make certain deductions from the security deposit and is not allowed to deduct for damage caused by ordinary wear and tear from the security deposit.

20. In some instances, as with Plaintiff, Defendant charged a security deposit that grossly exceeded the maximum that a landlord is permitted to charge. A landlord is limited to a security deposit that is equivalent to one (1) month of rent, yet Defendant charged Plaintiff a security deposit that was nearly double Plaintiff's rent.

21. When tenants, like Plaintiff, moved out, Defendant made deductions from their security deposits that were more than $125 and Defendant did not provide any supporting documentation for the charges.

22. Defendant made these undocumented, unsupported, and unlawful deductions from security deposits despite knowing its obligations under Cal. Civ. Code § 1950.5. As such, these deductions were made in bad faith.

23. Defendant did not return any remaining security deposits within twenty-one (21) days.

24. Further, Defendant inflicts penalties upon its California tenants for failing to pay rent by the third day of the month by charging a flat rate "late fee" of $100.00.

25. Not only were these actions taken in bad faith, but they were made with the intention to defraud unsuspecting tenants, like Plaintiff, and increase overall profitability of each rental unit.

26. As a result of Defendant's conduct, Plaintiff and Class Members have been harmed and damaged in several ways.

27. Defendant should not be allowed to steal, defraud, and threaten unsuspecting and vulnerable tenants with illegal bullying tactics Defendant knows it should not be using.

28. Plaintiff, on behalf of herself and all others similarly situated, alleges claims for (1) Unlawful Retention of Residential Security Deposit (Cal. Civ. Code § 1950.5); (2) Unlawful Liquidated Damages, (Cal. Civ. Code § 1671); (3) Violation of the California Unfair Competition Law (Cal. Business & Professions Code § 17200, et seq.); (4) Violation of the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 et seq.); (5) Statutory Larceny (Cal. Pen. Code §§ 484 & 496); and, (6) (6) Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 & 1964(c).

29. Plaintiff and the Class Members seek damages from Defendant, and to compel Defendant to adopt adequate legal practices regarding the handling of security deposits, demanding payment for unsubstantiated costs, and collecting illegal fees.

## SPECIFIC FACTS

### A. Background

30. In May 2025, Plaintiff moved into a unit at Domain, pursuant to a written lease agreement. Plaintiff paid a $500 security deposit to Defendant for this unit.

31. In January 2026, Plaintiff relocated into a new unit at Domain. Plaintiff paid another security deposit—this time in the amount of $3,214—to Defendant for the new unit. Unfortunately for Plaintiff, this unit was excessively dirty when she moved in.

32. Defendant was responsible for the handling and return of Plaintiff's security deposit during the transition between rental units. Defendant had twenty-one (21) days to make deductions and return any remaining portion of the security deposit related to the previous unit.

33. Around January 13, 2026, Defendant elected to make deductions from Plaintiff's first security deposit. Defendant made deductions that exceeded the $500 security deposit by $80.94.

34. The deductions Defendant made were for utilities and administrative fees, in addition to "Cleaning Damage Charges" of $175.00 and "Paint Damage Charges" of $175.00. Defendant demanded payment of the $80.94 not paid from the deposit.

35. Defendant did not provide any documentation to substantiate the deductions from Plaintiff's security deposit. Defendant did not provide any pictures of the vacated unit.

36. Plaintiff requested documentation to substantiate the charges. Defendant responded and stated that it has a policy of not providing documentation of deductions from security deposits.

37. Plaintiff refused to pay the unsubstantiated charges.

38. On March 4, 2026, Defendant charged Plaintiff a $100.00 "late fee" for failing to pay rent by the third day of the month.

39. Around March 31, 2026, and after giving adequate legal notice of terminating the tenancy, Plaintiff vacated the new unit.

40. Defendant was again responsible for the handling and return of Plaintiff's security deposit. Defendant had twenty-one (21) days to make deductions and return any remaining portion of the security deposit to Plaintiff.

41. Around April 7, 2026, Defendant elected to make deductions from Plaintiff's second security deposit of $3,412.00. The deductions Defendant made were for utilities, pet rent, and administrative fees, in addition to "Express Cleaning" of $170.00 and "Concession Repayment" of $2,134.15. The Concession Repayment related to an alleged special credit that Plaintiff received in the form of reduced rent that Defendant claimed it was owed due to the termination. Defendant's position was that it only owed Plaintiff $910.61.

42. Defendant did not provide any documentation to substantiate the

deductions from Plaintiff's security deposit. Defendant did not provide any pictures of the second vacated unit.

43. To date, Defendant has not returned either of Plaintiff's security deposits, or any portions thereof.

**B. Security Deposits**

44. A landlord may not make deductions from a security deposit for anything it likes. California law is very clear as to what deductions a landlord may make from a security deposit, and the timing.

45. The California Supreme Court said it best,

> From the plain language of the statute we conclude that a landlord (1) must return a tenant's security deposit within the specified period after the termination of the tenancy, (2) may retain all or part of the security deposit as compensation for *unpaid rent, repairs, and cleaning*, and (3) must provide a written accounting of any amounts retained within the specified period. If, within the specified period, the landlord has not provided the tenant with a written accounting of the portion of the security deposit he plans to retain, the right to retain all or part of the security deposit under section 1950.5, subdivision (f), has not been perfected, and he must return the entire deposit to the tenant.
>
> *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744-745

46. California Civil Code § 1950.5 provides that a security deposit may only be used for: (i) compensation to the landlord for a tenants default in rent; (ii) repairing damage to the premises that was caused by the tenant and is exclusive of ordinary wear and tear; (iii) cleaning the unit to return it to the level of cleanliness at the start of the tenancy; and, (iv) the cost of repairing the landlord's personal property, but only if the rental agreement authorizes use for such.[2]

47. California Civil Code § 1950.5 prohibits the landlord from:

> assert[ing] a claim against the tenant or the security for damages to the premises or any defective conditions that preexisted the tenancy,

[2] Cal. Civ. Code § 1950.5(b)(1-4)

> for ordinary wear and tear or the effects thereof, whether the wear and tear preexisted the tenancy or occurred during the tenancy, or for the cumulative effects of ordinary wear and tear occurring during any one or more tenancies.[3]

48. It further prescribes when a tenancy is ending unrelated to a lawful eviction, the landlord shall notify the tenant in writing of the right to request an initial inspection of the premises.[4] The purpose of such inspection is to give the tenant an opportunity to fix identified issues—consistent with the rights and obligations of the parties under the rental agreement—so that the tenant can avoid deductions from the security.[5]

49. After such initial inspection, the landlord is required to give the tenant an itemized statement (in person or left in the premises) that specifies the repairs or cleanings allowed under the law, including the text of the law.[6]

50. The tenant shall then have the opportunity to fix such issues reported, so long as it is their obligation to do so, to avoid deductions to their security deposit.[7]

51. The landlord is prohibited from making deductions from the security deposit for repairs or cleaning that were not identified in the initial inspection, unless (1) the identified repairs or cleaning were not done by the tenant, (2) the repairs or cleaning were done for damages that occurred between the inspection and the move-out, or (3) the tenants possessions prevented the landlord from finding the need for cleaning or repair.[8] To reiterate, if repairs or cleaning were not identified in the initial inspection, a landlord may not deduct costs for unidentified repairs or cleaning from the security deposit.

52. After the tenant moves out, the landlord has twenty-one (21) days to personally deliver or send by first-class mail, postage prepaid, (i) a copy of an itemized

---

[3] Cal. Civ. Code § 1950.5(e)(2)(A)
[4] Cal. Civ. Code § 1950.5(f)(1)
[5] Cal. Civ. Code § 1950.5(f)(1)
[6] Cal. Civ. Code § 1950.5(f)(2)
[7] Cal. Civ. Code § 1950.5(f)(3)
[8] Cal. Civ. Code § 1950.5(f)(4)-(6)

statement of deductions to the security deposit with the lawful bases for such deductions, and (ii) any remaining portion of the security to the tenant.[9]

53. The landlord is required to include copies of documents (like receipts) showing charges incurred and deducted by the landlord to repair or clean the premises with the itemized statement.[10]

54. A landlord is required to provide details of who did the work. If the landlord or the landlord's employee did the work, the itemized statement shall reasonably describe the work performed and must include the time spent and the reasonable hourly rate charged.[11]

55. If someone other than the landlord or the landlord's employee did the work, the landlord shall provide the tenant a copy of the bill, invoice, or receipt supplied by the person or entity performing the work, and the landlord must provide the tenant with the name, address, and telephone number of the person or entity, in the itemized statement if the bill, invoice, or receipt does not include that information.[12]

56. If the landlord fails to comply with the law in bad faith, the landlord is not entitled to collect any of the security deposit.[13]

57. Further, if possession is returned to a landlord after April 1, 2025, the landlord is required to take photos of the unit *before* and *after* any repairs or cleaning is done to the unit.[14]

58. If a deduction is made from the security deposit for repairs or cleaning, such photos are to be delivered to the tenant along with a written explanation of the cost for the allowable work done to the premises.[15]

59. For Plaintiff's move out, Defendant did not conduct an initial inspection and then made many improper deductions from the security deposit.

---

[9] Cal. Civ. Code § 1950.5(h)(1)
[10] Cal. Civ. Code § 1950.5(h)(2)
[11] Cal. Civ. Code § 1950.5(h)(2)(A)
[12] Cal. Civ. Code § 1950.5(h)(2)(B)
[13] Cal. Civ. Code § 1950.5(h)(7)
[14] Cal. Civ. Code § 1950.5(g)(2) (emphasis added)
[15] Cal. Civ. Code § 1950.5(h)(2)(D)

60. First, in lieu of conducting an initial inspection, Defendant represented that Plaintiff was eligible for an "express checkout" meaning that if Plaintiff paid an express checkout fee (a cleaning fee), then Defendant would not make deductions from the security deposit for ordinary wear and tear. Defendant never conducted the initial inspection and did not provide any documentation for the cleaning fee with the itemized statement.

61. Second, the deductions from the security deposit were, with exception of the non-documented cleaning fee, for fees that are not (i) compensation to the landlord for a default in rent; (ii) repairing damage to the premises that was caused by Plaintiff and is exclusive of ordinary wear and tear; (iii) cleaning the unit to return it to the level of cleanliness at the start of the tenancy; or, (iv) the cost of repairing the landlord's personal property. The vast majority of the deductions from Plaintiff's deposit were for the Contested Fees and the Transfer Fees.

62. Third, the supporting documentation attached to the itemized statement Defendant gave Plaintiff did not adequately describe the charges because it merely restated the charges.

63. Finally, photographs were not provided timely by an allowable means, and the photos that were provided, approximately one year later, depicted the condition before cleaning or repairs were done and were completely devoid of any written explanation of the cost of the allowable repairs or cleaning.

64. Defendant has not provided documentation (i.e., receipts from service providers for work alleged to have been done to Plaintiff's unit) that complies with Cal. Civ. Code § 1950.5(h)(2) to Plaintiff in any form.

65. From these acts, Defendant gains unlawful revenue through nonjudicial, summary deduct-and-retain procedures, where it already possesses and controls security deposits, then makes unlawful deductions from them, rather than pursuing lawful means.

66. Defendant fraudulently billed Plaintiff and Class Members for bogus

charges and hid any amounts it actually paid. Defendant's representations amount to false and fraudulent misrepresentations of not only the condition of the units, but the tenants' legal obligations to pay Defendant such fees.

**C. Defendant's Acts of Theft and Fraud**

67. Unfortunately for Defendant's current and former tenants, Defendant's policies and procedures amount to larceny.

68. To commit statutory larceny in California, one must: (i) take the personal property, (ii) of another, (iii) without consent, and (iv) with the intent to permanently deprive the owner of that property.[16]

69. Liability is imposed upon all the actors who commit those acts outlined above, and those who knowingly aids and abets such actors, or those who knowingly receive such stolen property.[17]

70. Defendant has developed common policies, practices, procedures or schemes designed to steal money from current and former tenants, without consent, to benefit itself, with the intention of permanently depriving the money from the current and former tenants.

71. Such money is stolen pursuant to false and fraudulent misrepresentations as outlined above, which are made knowingly and by design, pursuant to common policies, practices, procedures or schemes. Defendant uses such fraudulent misrepresentations to retain security deposits entrusted to it and intentionally charge unlawful fees.

72. <u>Federal Wire Fraud.</u> To commit wire fraud, one must (i) have a scheme to defraud someone out of money or property, (ii) by making a material misrepresentation or omission, (iii) with the intent to defraud, and (iv) effectuate such scheme by wire transmission.[18] Defendant is operating pursuant to a scheme to defraud former tenants out of money or property in that they charge tenants exorbitant and

[16] Cal. Pen. Code § 484
[17] Cal. Pen. Code § 496
[18] 18 U.S.C. § 1343

unsubstantiated move out fees, without a lawful basis to do so.

73. Defendant, on behalf of itself and the legal owners of the properties that it manages, asserts a purported lawful basis for the move out fees by threatening tenants with collections actions. Such representations to tenants regarding unlawful fees are material, false, unsupported by evidence, and done with the intention to defraud.

74. Defendant committed, attempted to commit, or conspired to commit an offense under 18 U.S.C. § 1349 and is thus equally liable to any other member of its enterprise.

75. Defendant sent electronic messages (though its resident portal and through emails, which are each wire transmissions) to Plaintiff. Each message (i) was sent as part of a scheme to defraud someone out of money or property, (ii) made at least one material misrepresentation or omission, (iii) was sent with the intent to defraud, and (iv) sent by wire transmission.

76. Every time a tenant would vacate a unit, Defendant would illegally charge that tenant certain fees or costs in violation of California law, and fail to provide supporting documentation, such as receipts. Each such act, coupled with the emails, constitutes wire fraud in violation of the 18 U.S.C. § 1343 because Defendants were acting to further the scheme they had devised to defraud tenants out of money or property, as alleged above.

77. All such acts outlined in the preceding six (6) paragraphs were related and continuous.

**D. Plaintiff and Class Members Suffered Damages**

78. Defendant's policies, practices, procedures, and schemes have caused Plaintiff and Class Members to be damaged. Plaintiff and Class Members have suffered monetary damages in the form of losing entire security deposits, paying additional charges related to habitability that were not their legal responsibility to pay, and being charged hidden fees.

///

## **CLASS ACTION ALLEGATIONS**

79. Plaintiff brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

> SECURITY DEPOSIT CLASS
> All persons who, during the period beginning four (4) years prior to the filing of the Complaint through the date of class certification, were tenants of residential properties in California, whose tenancies ended during that period, and from whose security deposits Defendant deducted any amount (the "Security Deposit Class").
>
> FEES CLASS
> All persons who, during the period beginning four (4) years prior to the filing of the Complaint through the date of class certification, were tenants at residential properties in California where Defendant imposed late fees, and who paid one or more such charges (the "Class").

80. Excluded from the Classes are Defendant, its officers and directors, families and legal representatives, heirs, successors, or assigns and any entity in which either Defendant has a controlling interest, and any Judges assigned to this case and their immediate families.

81. Plaintiff reserves the right to amend or modify the definition of the Classes to provide greater specificity and/or further division into subclasses or limitation to particular issues.

82. **Numerosity:** The members of the Classes are so numerous that joinder of all members is impracticable. The exact number or identification of class members is presently unknown, but it is believed that there are hundreds if not thousands of class members in the Classes. The identities of the Class Members are ascertainable and can be determined based on records maintained by Defendant.

83. **Predominance of Common Questions:** There are multiple questions of law and fact common to the Class that will predominate over questions affecting only individual class members. The questions of fact and law that are common to the Class

Members and predominate over questions that may affect individual Class Members, include, but are not limited to:

a) Whether Plaintiff's and the Class Members were charged late fees alleged above;

b) Whether such late fees were liquidated damages;

c) Whether such late fees were penalties;

d) Whether Defendant attempted to determine the damages it would sustain prior to fixing a price for a late fee;

e) Whether the Concession Repayment was a liquidated damage;

f) Whether the Concession Repayment was a penalty;

g) Whether Defendant attempted to determine the damages it would sustain prior to fixing a price for the Concession Repayment;

h) Whether Defendant violated California Civil Code § 1950.5 in bad faith;

i) Whether Defendant had a policy, practice, or procedure of charging Plaintiff and the Class Members to retain Plaintiff's and Class Members' security deposits;

j) Whether Defendant had a policy, practice, or procedure of deducting charges not authorized by Cal, Civ. Code § 1950.5 from Plaintiff's and the Class Members' security deposits;

k) Whether Defendant actually incurred the costs it deducted from Plaintiff and Class Members security deposits;

l) Whether such charges are considered "debts"

m) Whether Defendant credited Plaintiff or Class Members for ordinary wear and tear;

n) Whether Defendant engaged in unfair or deceptive business practices;

o) Whether Defendant engaged in larceny;

p) Whether Defendant caused Plaintiff and Class Members damages;

q) Whether Plaintiff and Class Members are entitled to actual damages,

nominal and/or statutory damages, other monetary relief, and/or equitable relief;

r) Whether Defendant violated the California Unfair Competition Law (Business & Professions Code § 17200, et seq);

s) Whether Defendant was part of an enterprise;

t) Whether there were two predicate criminal acts within the previous ten (10) years for liability under RICO;

u) Whether Defendant engaged in wire fraud;

v) Whether Defendant engaged in racketeering;

w) Whether Plaintiff and class members are entitled to relief under RICO.

84. **Typicality:** Plaintiff's claims are typical of those of other Class Members because they all had their security deposits retained, additional renovation costs were passed on to them, and they were charged illegal fees under the lease, due to Defendant's virtually identical conduct.

85. **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class with interests that do not conflict with the interests of the other members of the Classes. Plaintiff is represented by experienced and competent attorneys ("Class Counsel") who have litigated numerous class actions. Class Counsel intends to prosecute this action vigorously for the benefit of everyone in the Class. Plaintiff and Class Counsel can fairly and adequately protect the interests of all members of the Class.

86. **Superiority**: A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Without the class action vehicle, the Class Members would have no reasonable remedy and would continue to suffer losses. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. There is no foreseeable difficulty in managing this action as a class action and it provides the

benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>First Cause of Action</u>**

**Unlawful Retention of Residential Security Deposits**

**Cal. Civ. Code § 1950.5**

87. Defendant did not have a policy, practice, or procedure that complied with the initial inspection practices under Cal. Civ. Code § 1950.5(f)(1).

88. Defendant charged Plaintiff and Security Deposit Class Members unsubstantiated cleaning, repair, and/or painting fees and deducted those charges from the security deposit.

89. Defendant had a policy, practice, or procedure of charging tenants costs associated with returning a unit to a condition that was better than as delivered to the tenants, in violation of Cal. Civ. Code § 1950.5(e)(2).

90. This policy, practice, or procedure did not exclude ordinary wear and tear from the charges, or otherwise credit tenants for ordinary wear and tear, in violation of Cal. Civ. Code § 1950.5(b)(2).

91. Defendant did not have a policy, practice, or procedure of providing the itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security within twenty-one (21) days of Plaintiff or Class Members' move-out, by first class mail or in-person delivery, as required by Cal. Civ. Code § 1950.5(h)(1).

92. Defendant did not provide copies of documents showing charges incurred and deducted by Defendant to repair or clean the premises, along with the itemized statement, as required by Cal. Civ. Code § 1950.5(h)(2).

93. Defendant, as a result of these charges, practices, policies, or procedures, unlawfully retained some or all of Plaintiff's and Security Deposit Class Members' security deposits.

94. Defendant's misconduct described above was done in bad faith.

95. As a direct and proximate result of Defendant's conduct, Plaintiff and Security Deposit Class Members suffered damages.

96. Plaintiff and Security Deposit Class Members are entitled to actual damages and statutory damages of twice the amount of their security deposits.

**<u>Second Cause of Action</u>**

**Unlawful Liquidated Damages**

**Cal. Civ. Code § 1671**

97. Defendant rented real property to Plaintiff and Class Members for use as dwellings which makes it subject to Cal. Civ. Code § 1671(c)(2).

98. Cal. Civ. Code § 1671(d) provides that "a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

99. Any damages Defendant claims to have sustained as a result of Plaintiffs' and Class Members' acts or omissions, which purportedly justify the late fees and/or Concession Repayment, is neither impracticable nor extremely difficult to ascertain. Nor are these fees the result of any reasonable effort to estimate fair compensation for Defendant's actual damages allegedly caused by caused by late rent or terminating a lease before a fixed term. Instead, these charges are usurious, unreasonable, excessive, and void under California law. Such fees are thus intended to be punitive rather than compensatory.

100. Defendant's excessive fees are accordingly unlawful under Cal. Civ. Code § 1671(d).

101. Plaintiff and Class Members are entitled to restitution of all such fees Defendant has collected from them, as well as interest and other relief as specifically prayed for herein.

**<u>Third Cause of Action</u>**

**Unfair and Deceptive Business Practices**

**Cal. Bus. & Prof. Code § 17200 et seq.**

102. Under §17200 of the California Business and Professions Code, "any unlawful, unfair or fraudulent business act or practice" constitutes "unfair competition."

103. Defendant's violations of law alleged herein constitute unlawful, unfair and/or fraudulent business acts and practices, and therefore "unfair competition," for the purposes of Cal. Bus. & Prof. Code § 17200 et seq. Among other violations, Defendant's collections of late fees and Concession Repayments, and other amounts deducted from Class Members' security deposits are unlawful, and all entitle them to restitution under the UCL.

104. Plaintiff and Class Members have suffered financial injuries in fact and have lost money and/or property as a result of such unfair competition.

105. The facts set forth above establish that Plaintiff and Class Members are entitled to judgment against Defendant, awarding restitution to Plaintiff and Class Members of all monies acquired by means of the described unfair competition, including all wrongfully charged fees and wrongfully withheld security deposits.

106. Plaintiff and Class Members are further entitled to declaratory and injunctive relief establishing the rights and obligations among the Parties and for an order mandating Defendant adhere to the requirements of law.

**<u>Fourth Cause of Action</u>**

**Rosenthal Fair Debt Collection Practices Act**

**Cal. Civ. Code § 1788 et seq.**

107. In enacting the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788-1788.33, the California Legislature found that "[u]nfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound

extensions of credit to consumers [that] [t]here is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other" and that it was necessary to ". . . prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ. Code § 1788.1.

108. Defendant is a "debt collector" within the meaning of Cal. Civ. Code § 1788.2(c) of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") because in the ordinary course of business it regularly collects rental payments, fees, and move out costs, each of which is a "debt" as defined by Cal. Civ. Code § 1788.2(d).

109. Defendant violated the RFDCPA by (1) initiating contact with Plaintiff and Class Members to collect fees and charges Defendant knew or should have known had been procured through fraud, and that, even if valid, they would be subject to a vast array of potential defenses and (2) by accepting and retaining payments made on these invalid fees and charges. These acts violate 15 U.S.C. 1692e and 15 U.S.C. 1692f which violate Cal. Civ Code § 1788.17.

110. California courts have routinely held that the RFDCPA prohibits unfair and deceptive conduct. *Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1084 (2019).

111. As a result of each and every violation of the RFDCPA, Plaintiff and each Class Member is entitled to actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages in the amount up to $1,000 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney fees and costs pursuant to Cal. Civ. Code § 1788.30(c).

**<u>Fifth Cause of Action</u>**

**Statutory Larceny**

**Cal. Pen. Code §§ 484 & 496**

112. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs.

113. Cal. Pen. Code § 496 imposes liability upon:

> [e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained[.]

114. Cal. Pen. Code § 484, which defines "theft", states in pertinent part:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

115. Under California law, Plaintiff's and Class Members' money constitutes "property" that can be the subject of theft.

116. Defendant acted in a manner constituting theft by defrauding Plaintiff and Class Members of their money by making false or fraudulent representations or pretenses, with the specific intent to deprive Plaintiff and Class Members of their property.

117. Plaintiff and Class Members are entitled to treble damages, as well as attorneys' fees and costs as a result of Defendant's violations of Cal. Pen. Code § 496(a) under Cal. Pen. Code § 496(c).

## <u>Sixth Cause of Action</u>

### Racketeer Influenced and Corrupt Organizations Act

### 18 United States Code § 1962 & 1964(c)

118. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs.

119. Under 18 U.S.C. § 1964(c), individuals have the right to sue for damages if their property is harmed by violation of 18 U.S.C. § 1962 of the RICO.

120. That section of the RICO, 18 U.S. Code § 1962, states:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce…18 U.S. Code § 1962(a)

121. Defendant and various legal entities formed either an association-in-fact or pursuant to contract by virtue of a property management agreement, having as its ostensible purpose the creation of a landlord enterprise that would assess unlawful charges against its tenants to maximize profits.

122. Such mechanisms employed to maximize profits included devising a scheme of racketeering activity, namely wire fraud. Defendants did so to further the following fraudulent purposes:

a. To saddle tenants with charges in addition to their obligations to pay rent in one of the most expensive places to reside, while concealing that the tenants are not obligated to pay such fees; and

b. To conceal costs charged to tenants and pass inflated costs on to such tenants after vacatur.

123. Such association or contractual relationship was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

124. The pattern of racketeering activity engaged in by Defendants has persisted from at least 2025 to present, when Plaintiff's original lease ended.

125. Defendant, in its role as owner and/or property manager, collected all payments made from defrauded tenants and was in charge of all communications with the tenants. In these communications, Defendant furthered the fraud by engaging in a systemic practice of concealing from the tenants the fact that the late fees were illegal and such tenants had the right to not pay the charges and fees. Additionally, by not providing receipts with the itemized statements, Defendant was not entitled to collect any portion of the security deposit, but it knowingly and fraudulently did so nonetheless. Further, Defendant continued fraudulent activity by deceiving its former tenants regarding the work done to the recently vacated units.

126. Defendants kept the costs and fees that were collected over the course of years and earned millions of dollars in illegal fees and unlawful charges passed on to tenants.

127. In its operation of the collection of the fees and costs from current and former tenants, Defendants relied on the interstate wire system, sending and receiving thousands of emails and ACH transmissions.

128. Using the interstate wire system, Defendants sent presumably thousands of demands for payment from current and former tenants, demanding payment of the full balances or payment plans designed to motivate payments from confused or worried tenants.

129. The enterprise continued extracting money from Plaintiff and Class Members regularly and at the termination of the tenancy.

130. Every payment made online through Defendants' online rent payment portal by Plaintiff and Class Members constitutes a discrete transaction in which Defendants perpetuated their scheme of defrauding current tenants out of money or property by making material misrepresentations or omissions through wire transmission. Every demand Defendant made to be compensated for renovations to vacated units constitute an individual act of wire fraud in violation of the United States Code. Every payment, which was made on a monthly basis, by Plaintiff and Class

Members, for illegal fees and security deposit related charges is itself and individual act of wire fraud in violation of the United States Code.

131. Pursuant to 18 U.S.C. § 1964(c), Plaintiff and the Class have suffered injury to their property by Defendants' violations of 18 U.S.C. § 1962 because Plaintiff and Class Members are victims of Defendants' schemes. Plaintiff and Class Members are entitled to threefold the damages they sustained and the costs of the suit, including reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

1. Certify the Classes pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23 (b)(3), and appoint Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel;
2. Actual damages and statutory damages pursuant to Cal. Civ. Code § 1950.5(m);
3. Return of all late fees paid to Defendant;
4. Return of all Concession Repayments paid to Defendant;
5. Actual damages, statutory damages, and reasonable attorney's fees and costs, pursuant to Cal. Civ. Code § 1788.30;
6. Injunctive and other equitable relief as is necessary to protect the interests of members of the Classes under Cal. Civ. Code § 1788.30;
7. Treble damages, as well as attorneys' fees and costs, pursuant to Cal. Pen. Code § 496(c);
8. Restitution for all members of the Classes under the UCL;
9. Actual Damages for all Class Members, trebled under 18 U.S.C. § 1964(c), and reasonable attorney's fees and costs;
10. An award of compensatory, statutory, and nominal damages in an amount to be determined;
11. An award for equitable relief requiring restitution and disgorgement of the

revenues wrongfully retained as a result of Defendant's wrongful conduct;

12. Such other relief as the court deems fair and reasonable.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: May 18, 2026

**SHAY LEGAL, APC**

By: *s/ Harrison J. Lynch*
Daniel G. Shay
Harrison J. Lynch
Dan@ShayLegal.com
Harrison@ShayLegal.com
*Attorneys for Plaintiff*

DATED: May 18, 2026

**SWIGART LAW GROUP, APC**

By: *s/ Joshua B. Swigart*
Joshua B. Swigart
Josh@SwigartLawGroup.com
*Attorneys for Plaintiff*